IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:16-CV-106-BO

NEW HAMPSHIRE INSURANCE )
COMPANY, )
 )
        Plaintiff, )
 )
v. ) **ORDER**
 )
FREDDIE ROYSTER, ADMINSTRATOR )
OF THE ESTATE OF ERIC ROYSTER )
 )
        Defendant. )
 )

This matter is before the court on the plaintiff's motion for default judgment [DE 12] and the memorandum filed in support of the motion for default judgment [DE 14]. For the reasons discussed below, Plaintiff's motion is granted.

## BACKGROUND

Plaintiff New Hampshire Insurance Company ("New Hampshire") initiated this declaratory judgment action against defendant Freddie Royster, Administrator of the Estate of Eric Royster, on March 9, 2016. New Hampshire seeks a declaratory judgment that the commercial automobile insurance policy New Hampshire issued to Newesco, Inc. affords no coverage to the defendant with respect to an accident that occurred on December 2, 2014. This case is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, et seq. and Rule 57 of the Federal Rules of Civil Procedure. The record shows that New Hampshire served defendant with process pursuant to Rule 4 of the Federal Rules of Civil Procedure on May 6, 2016. [DE 8]. Defendant did not file a responsive pleading to the complaint, and the Clerk of

Court entered an entry of default against defendant on July 11, 2016. [DE 10]. The motion for entry of default was served on defendant by U.S. Mail.

New Hampshire now moves for default judgment as against defendant. This motion for default judgment was filed on December 23, 2016 and also served on defendant by U.S. Mail. Defendant has not appeared or defended this action in any way.

DISCUSSION

Pursuant to 28 U.S.C. § 1332, this Court has original jurisdiction over matters where the amount in controversy exceeds the value of $75,000 and is between citizens of different States. 28 U.S.C. §1332(a). In the present case, the plaintiff is a citizen of Illinois and New York. Defendant is a citizen of North Carolina. Accordingly, there is complete diversity of citizenship between the parties. In declaratory judgment actions, the amount in controversy is measured by the value of the object of the litigation. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013). The amount in controversy in the present matter is the value of the demand made by defendant for UM benefits under the New Hampshire Policy, specifically $1 million. Because this demand exceeds the jurisdictional amount required under 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over this declaratory judgment action.

This Court has personal jurisdiction over defendant. Rule 4 of the Federal Rules of Civil Procedure allows an individual to be served by leaving a copy of the Summons and Complaint at the individual's residence with someone of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e)(2)(B). On May 6, 2016, C.R. Williams, Deputy Sheriff of Harnett County, North Carolina, left the Summons and Complaint with Zeala Royster, a person of suitable age and discretion who resided at the same residence as the defendant. [DE 8]. Accordingly, this Court as personal jurisdiction over defendant.

2

The Federal Declaratory Judgment Act allows a federal court to declare the rights, obligations and liabilities of parties to a contract. 28 U.S.C. § 2201. It is well established that a declaration of parties' rights under an insurance policy is an appropriate subject for a declaratory judgment action. *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). A federal court cannot refuse to entertain a declaratory judgment action that is properly within its jurisdiction unless there is good cause. *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375 (4th Cir. 1994).

Upon default, the well-pleaded facts alleged in the complaint are deemed admitted. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). Based on the plaintiff's complaint, the following facts are established.

Eric Royster was a long-distance truck driver who lived in Harnett County, North Carolina. He entered into a Contractor Agreement and Lease to transport household goods and other items throughout the United States for Atlas Van Lines. To carry out his duties and responsibilities under the Contractor Agreement and Lease, Mr. Royster was assigned to drive a 1995 Peterbilt Tractor ("95 Peterbilt Tractor"). The 95 Peterbilt Tractor was licensed and registered in the State of Indiana.

Prior to December 2, 2014, Mr. Royster was requested to haul a load of household goods from North Carolina to California. As Mr. Royster was driving the 95 Peterbilt Tractor westbound on IH-20 near Waskom, Harrison County, Texas, the trailer connected to the 95 Peterbilt Tractor caught fire. Upon discovering the fire, Mr. Royster pulled the 95 Peterbilt Tractor and attached trailer to the side of the westbound lanes of IH-20 to disconnect the trailer from the 95 Peterbilt Tractor.

After disconnecting the trailer from the 95 Peterbilt Tractor, Mr. Royster left the vehicle parked on the side of the westbound lanes of travel on IH-20, crossed a grass median, and walked to the side of the eastbound lanes of travel on Interstate 80. At that same time, George Allen Edwards was driving a pickup truck in the eastbound lanes of travel on I-80. Mr. Edwards' vehicle struck Mr. Royster as Mr. Royster was walking or standing along the side of the eastbound lanes of travel on I-80, resulting in Mr. Royster's death. Mr. Royster was located away from the 95 Peterbilt Tractor when he was struck by Mr. Edwards' vehicle. At the time of the accident, Mr. Edwards was not covered under any automobile liability policy.

New Hampshire issued a commercial automobile insurance policy to Newesco, Inc., Policy No. 01-CA-019049744-0, with effective dates of December 31, 2013 through December 31, 2014 ("New Hampshire Policy"). Newesco, Inc. specifically rejected uninsured motorist ("UM") coverage for all vehicles covered under the New Hampshire Policy that are registered in Indiana. The rejection of UM coverage was made pursuant to a valid Indiana Notice Uninsured and Underinsured Motorist Coverage form, Form No. 62589 (9/10), which was signed by Newesco on February 14, 2014 and made effective from the inception of the New Hampshire Policy on December 31, 2013 forward. An endorsement was added to the New Hampshire Policy which eliminated UM coverage for all covered vehicles registered in Indiana from December 31, 2013 forward, and premium was refunded to the Named Insured consistent with that endorsement.

The New Hampshire Policy provides the following insuring agreement for uninsured motorist ("UM") coverage for covered vehicles registered in Indiana:

**A. Coverage**
    1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damage must result from:

4

  a. "Bodily injury" sustained by the "insured" and caused by an "accident" with an "uninsured motor vehicle";
  b. "Property damage" caused by an "accident" with an "uninsured motor vehicle" if the Schedule or Declarations indicates that both "bodily injury" and "property damage" Uninsured Motorist Insurance apply.
The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

The New Hampshire Policy specifically addresses who is insured under its UM coverage provisions as follows:

### B. Who Is An Insured
If the Named Insured is designated in the Declarations as:
 2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
  a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto"…
  b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
  c. The Named Insured for "property damage" only.

The New Hampshire Policy specifically defines "occupying" as follows:

### F. Additional Definitions
As used in this endorsement:
 2. "Occupying" means in, upon, getting in, on, out or off.

These admitted facts alleged in the complaint support New Hampshire's request for declaratory judgment. The Named Insured under the New Hampshire Policy specifically rejected UM coverage for all vehicles covered under the New Hampshire Policy and registered in Indiana on February 14, 2014. The rejection was made pursuant to a valid Indiana Notice Uninsured and Underinsured Motorist Coverage form and was signed by an authorized person for the Named Insured. Furthermore, an endorsement was added to the New Hampshire Policy which eliminated UM coverage for all Indiana vehicles covered under the Policy. Because the rejection of UM coverage occurred during the term of the New Hampshire Policy, premium associated with the provision of UM coverage was refunded to the insured. The named insured's rejection of UM

5

coverage under the New Hampshire Policy was valid under the Indiana UM statute. *See Liberty Mutual Fire Insurance Company v. Beatty*, 870 N.E.2d 546, 551 (Ind. App. 2007).

The fact that the 95 Peterbilt Tractor was retroactively added to the New Hampshire Policy, after the date of the accident and with incorrect UM liability limits initially, does not change this analysis. At the time that the 95 Peterbilt Tractor, an Indiana vehicle, was added to the New Hampshire Policy, after December 2, 2014, the Named Insured had already rejected UM coverage under the New Hampshire Policy for all Indiana vehicles. Therefore, when the endorsement was made to the New Hampshire Policy adding the 95 Peterbilt Tractor, there was no UM coverage available under the New Hampshire Policy for the 95 Peterbilt Tractor.

Additionally, because Mr. Royster was not "occupying" the 95 Peterbilt Tractor as required by the New Hampshire Policy at the time of the accident, Mr. Royster does not qualify as an "insured" under the UM coverage provisions of the New Hampshire Policy. Illinois law applies to the interpretation of the language contained in the New Hampshire Policy. A federal court sitting in diversity applies the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg Co.*, 313 U.S. 487, 496 (1941); *Federal Ins. Co. v. Southern Lithoplate, Inc.*, 7 F. Supp. 3d 579, 583 (E.D.N.C. 2014). North Carolina follows the principle of *lex loci contractus* when determining which state's law applies to the interpretation of a contract. *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Under the principle of *lex loci contractus*, the substantive law of the state where the last act to make a binding contract occurred, usually the delivery of the policy, applies to the interpretation of the policy language. In the present case, the New Hampshire Policy was issued to Newesco, Inc., the named insured, in Illinois. Accordingly, Illinois law applies to the interpretation of the provisions contained in the New Hampshire Policy.

Under Illinois law, clear and unambiguous policy language is to be interpreted consistently with the plain and ordinary meaning of the terms used. An unambiguous policy should be enforced according to its terms, with each term to be harmoniously construed, unless doing so would contravene public policy. Courts are to avoid extending coverage beyond what is plainly expressed in the policy. *See Nicor, Inc. v. Associated Electric & Gas Ins. Servs.*, 860 N.E.2d 280 (Ill. 2006).

Illinois courts have interpreted the term, "occupying," contained in UM coverage provisions and found the term to be unambiguous:

> [W]e first find that the policy language is not ambiguous because the definition of "occupying" in the policy employs simple, everyday words that merely require application to unique factual situations. Therefore, we will not construe the language strictly against Zurich.

*Zurich Am. Ins. Co. v. Lukacs*, 2013 IL App (1st) 130664-U, *P27 (Ill. App. 2013).

Illinois has adopted a two-pronged test to determine whether a party was "occupying" a vehicle for purposes of UM coverage: (1) whether some nexus or relationship existed between the insured and the covered vehicle; and (2) actual or virtual physical contact between the insured and the covered vehicle. *Cohs v. Western States Ins. Co.*, 769 N.E.2d 1038, 1042 (Ill. App. 2002). The first prong of the test is met when the facts show that the individual had some relationship with the insured vehicle immediately prior to the accident, such as the individual was a driver or passenger in the vehicle. The second prong of the test requires the individual to have been in actual or virtual contact with the covered vehicle at the time of the accident. In determining whether this physical contact has been met, courts have found that a distance of 10 to 15 feet from the insured vehicle was too large to meet the definition of "occupying." *Greer v. Kenilworth Ins. Co.*, 376 N.E.2d 346, 349 (Ill. App. 1978).

The admitted facts alleged in the complaint support New Hampshire's request for declaratory judgment. Mr. Royster was no longer "occupying" the 95 Peterbilt Tractor at the time of the accident. Although there was a nexus between Mr. Royster and the covered auto in that Mr. Royster had been driving the 95 Peterbilt Tractor shortly before the accident, there was no actual or virtual physical contact between Mr. Royster and the 95 Peterbilt Tractor. The admitted facts in the complaint are that Mr. Royster was located away from the 95 Peterbilt Tractor at the time that he was struck by the uninsured motorist. The 95 Peterbilt Tractor was located on the side of the westbound lanes of IH-20. Mr. Royster, on the other hand, was struck while he was walking or standing in the eastbound lanes of travel on I-80. There was a grass median that separated the IH-20 from I-80. These undisputed facts show that Mr. Royster was not in actual or virtual contact with the 95 Peterbilt Tractor. Because Mr. Royster did not have actual or virtual contact with a covered vehicle at the time of his injuries, Mr. Royster was not "occupying" that vehicle as defined by the New Hampshire Policy.

Because Mr. Royster was not "occupying" the 95 Peterbilt Tractor as required by the New Hampshire Policy at the time of the accident, Mr. Royster does not qualify as an "insured" under the UM coverage provisions of the New Hampshire Policy. Therefore, New Hampshire is entitled to a declaration that Mr. Royster was not an "insured" under the UM coverage provisions of the New Hampshire Policy at the time of the accident.

## CONCLUSION

New Hampshire's motion for default judgment is GRANTED. It is hereby ORDERED that a declaratory judgment should be entered in favor of New Hampshire Insurance Company, and the court hereby declares and rules that the policy of insurance issued by New Hampshire, Policy No. 01-CA-019049744-0, to Newesco, Inc., does not provide uninsured motorist coverage

to defendant for the injuries and death suffered by Eric Royster when he was struck by an uninsured motorist on December 2, 2014. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this __12__ day of April, 2017.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE